633 So.2d 913 (1994)
James Marc POCHE
v.
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 93 CA 0369.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Richard J. Dodson, Baton Rouge, for plaintiff-appellee.
Lawrence A. Durant, John C. Young, Asst. Atty. Gen., Baton Rouge, for defendant-appellant.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
LOTTINGER, Chief Judge.
The State of Louisiana through the Department of Transportation and Development appeals the judgment rendered against it in this highway defect suit. The plaintiff has answered the appeal.
In appealing the State contends the trial court erred in:
1. relying upon plaintiff's survey because the same was obviously flawed;
2. finding that a shoulder which deviated in excess of 7% from the superelevated paved portion of a roadway was a hazardous defect at 40 miles per hour;

*914 3. giving any credence to the plaintiff's expert witnesses by virtue of their respective advocacy;
4. not finding that the sole proximate cause of the accident was the negligence of James Marc Poche;
5. failing to consider, adequately, the problems which would occur if it was necessary to maintain shoulders in a superelevated area of highway at a no greater deviation than 7%; and
6. not finding that the DOTD was reasonable in sloping the shoulder from the paved portion of the roadway to the ditch to provide adequate drainage for the road surface itself.
In answering the appeal, plaintiff contends the trial court erred in the apportionment of fault at 50% to each side, in only awarding $1,750,000.00 for future medical, and in holding La.R.S. 13:5112(C) constitutional.
The Louisiana Supreme Court in Chamberlain v. State, Through Department of Transportation and Development, 624 So.2d 874 (La.1993), put to rest the issue of the constitutionality of the $500,000.00 ceiling on general damages recoverable in a personal injury suit against the State of Louisiana, its agencies, or its subdivisions when it held unconstitutional La.R.S. 13:5106(B)(1). Thus, the issue of the general damages recoverable by this plaintiff is before this court.
Further, in Rick v. State, Department of Transportation and Development, 93 C 1776 c/w 93 C 1784, 630 So.2d 1271, 1277-78, (La.1994) the Louisiana Supreme Court held La.R.S. 13:5112(C) unconstitutional as it conflicts with La. Const. Art. XII, § 10(A).
Otherwise, after a thorough review and evaluation of the record we are convinced that the evidence supports the facts found and the reasons assigned by the trial judge, which we quote and herein adopt as our own. In oral reasons, the trial judge said:
IT'S A DIFFICULT CASE, IT'S BEEN ON MY MIND FOR THE LAST THREE OR FOUR WEEKS, AND I'VE HAD A GOOD CHANCE TO REFLECT AND STUDY, WHICH I'VE DONE. THERE'S NOT A WHOLE [SIC] OF DISPUTED FACTS ABOUT THE THING, REALLY, IT'S INFERENCES AND CAUSATION.
MR. POCHE WAS VERY FAMILIAR WITH THIS ROADWAY, ACCORDING TO THE EVIDENCE, HAD BEEN TRAVELING IT ABOUT TEN YEARS SINCE HE WORKED IN GONZALES AND HIS HOME WAS BETWEEN THAT CURVEON THE OTHER SIDE, NORTH OF THAT CURVE IN GONZALES, AND HE HAD A VERY UNFORTUNATE ACCIDENT ON THE NIGHT OF FEBRUARY 11TH OF '87. I DID GO TO THE SCENE FINALLY YESTERDAY AND JUST DROVE THROUGH THE CURVE. I'M SURE I DROVE THROUGH THE RIGHT ONE. IN FACT, I WENT ALL THE WAY DOWN TO HOPE VILLA AND THEN CAME BACK ACROSS THE BRIDGE. THERE'S A STRAIGHT-A-WAY, THIS IS PRETTY MUCH THE FIRST CURVE. I MEAN YOU'RE ON A GOOD STRAIGHT-A-WAY PAST HOO-SHOO-TOO AND THEN THERE'S A CURVE WITH THE POSTED ADVISORY SPEED AND THE CHEVRONS.
THE BURDEN IS ON THE PLAINTIFF TO ESTABLISH THAT THE SIGN WASN'T THERE, IN MY OPINION, I THINK THE SIGN WAS THERE. I THINK MORE PROBABLY THAN NOT IT WAS PROPERLY MARKED WITH THE ADVISORY SIGN WITH THE CHEVRONS, NO QUESTION ABOUT THAT. IT WOULDN'T MAKE A WHOLE LOT OF DIFFERENCE ANYWAY BECAUSE MR. POCHE WAS FAMILIARAND I'VE DRIVEN THAT ROAD IN THE PAST, A LONG TIME AGO. BUT JUST GOING YESTERDAY YOU WOULD REMEMBER PRETTY MUCH THAT SEQUENCE, THE STRETCH AND THEN THE CURVE WHETHER THE SIGN WAS OUT THERE OR NOT.
TROOPER FUTRELL HAS GOT A NAME FOR THE CURVE, I FORGET THE NAME, NICK DIXON CURVE, BECAUSE HE'S WORKED A LOT OF ACCIDENTS THERE. THAT'S NOT TOO HELPFUL TO THE ULTIMATE *915 DECISION OF THIS COURT, EXCEPT THE CURVE ITSELF IS A PRETTY SHARP CURVE AND I WOULD IMAGINE IN MOST OF THOSE ACCIDENTS THE PERSON JUST DIDN'T MAKE THE CURVE, WENT STRAIGHT ON OUT AND HIT [SIC] FENCE, BUT WE DON'T KNOW ALL THOSE DETAILS.
MR. POCHE WAS FAMILIAR WITH THE ROAD, HIS TESTIMONY IS HE WAS GOING ABOUT THE SPEED LIMIT LIKE HE ALWAYSIN ASCENSION PARISH IT'S 55 ON HIGHWAY 73 AND THEN AT THAT POINT IN TIME, IN FEBRUARY OF '87, I THINK THE RECORD IS CLEAR THAT THE SPEED LIMIT WAS 45, AND HE SAID HE NORMALLY REDUCED HIS SPEED TO 45 AND THOUGHT HE WAS GOING ABOUT 45 WHEN HE ENTERED THE CURVE, WHICH WAS FIVE MILES OVER THE ADVISORY SPEED IF THAT'S ACCURATE, NOBODY KNOWS PRECISELY. THE WAY IT ALL ADDS UP I THINK HE WAS PROBABLY GOING A LITTLE MORE THAN 45 WHEN HE ENTERED THE CURVE. HIS TESTIMONY, AND IT'S ONLY HIS TESTIMONY THAT WE HAVE, ABOUT WHAT HAPPENED AND IT HAPPENED SO FAST, I DON'T GUESS YOU'D EVER FORGET THAT UNLESS YOU HAD AMNESIA OR SOMETHING AND FORGOT THE WHOLE THING. BUT HIS TESTIMONY WAS PRETTY VIVID ABOUT WHAT HAPPENED. I DON'T THINK HE'D HAVE MADE UP THE BUSINESS ABOUT THE LIGHTS BEHIND HIM. HE WAS DISTRACTED BY LIGHTS BEHIND HIM AND HE WENT OFF ON THE SHOULDER.
MR. DURANT ARGUES THAT SOMEBODY SAID NOT MORE THAN A FOOT AND A-HALF, BUT THAT'S NOT PRECISE. THE TROOPER, ON HIS REPORT, SAID HE WAS OFF ON THE SHOULDER TWO TO FOUR FEET. I CAN'T TELL BY LOOKING AT THOSE PICTURES HOW FAR, IT LOOKS LIKE MORE THAN A FOOT AND A-HALF TO ME. BUT HE WENT OFF ON THE SHOULDER AND HIS TESTIMONY IS THAT THE RIGHT REAR WAS PULLING TO THE RIGHT. THE FACTS ARE CLEAR THAT HE MAINTAINED CONTROL WHILE TRAVERSING THE CURVE ON THE SHOULDER AND PARTLY IN THE ROADWAY, BUT AS HE REENTERED HE LOST CONTROL, ENDED UP ON THE OTHER SIDE OF THE ROAD IN THE DITCH AND CRASHED INTO THAT CULVERT EMBANKMENT, CAUSING HIM CATASTROPHIC INJURIES, THERE'S NO QUESTION.
THAT'S KIND OF THE HISTORY OF THE ACCIDENT, NOT MUCH MORE IN THERE, QUITE FRANKLY. I DON'T THINK THE MATTER WAS DOCUMENTED EXCEPT THE OFFICER'S REPORT.
THE COURT: IS THERE A DATE OF CLARY'S SURVEY IN THE THE [SIC]
MR. DURANT: YES, YOUR HONOR, THE WHOLE SURVEY IS IN THE RECORD, I BELIEVE IT'S DATED FEBRUARY-11, '87, YOUR HONOR, WHICH IS NOVEMBER OF '87.
THE COURT: SAY THAT AGAIN, YOU SAID FEBRUARY OF '87.
MR. DURANT: I DIDN'T MEAN THAT, I MEANT 11 OF '87, I'M SORRY.
THE COURT: OH, OKAY.
BY THE COURT:
WHICH WAS PRETTY CONTEMPORANEOUS AND THERE'S BEEN NO OPPOSITION TO THE SURVEY AS SUCH AS BEING ON GROUND DIFFERENT THAN WHAT WAS ON THE GROUND IN FEBRUARY OF '87, NOVEMBER TO FEBRUARY. THERE'S BEEN NO EVIDENCE THAT HIS SURVEY HAS AN APPRECIABLE DIFFERENCE ONE WAY OR THE OTHER AS TO THE ON-GROUND, THE SITE, AT THE TIME OF THE ACCIDENT. THE ON-GROUND SURVEY INDICATES THAT THERE IS A REVERSE SUPERELEVATION ON THE SHOULDER AT DIFFERENT LEVELS *916 THROUGHOUT THE CURVE AND IT DEFINITELY REFLECTS MORE THAN THE SEVEN PERCENT THAT, ACCORDING TO THE RURAL STANDARD, IS SUPPOSED TO BE THERE. AND THE EXPERT OPINION OF MR. EVANS IS THAT THE REASON FOR THE SUPERELEVATION ON THE SHOULDER IS TO AFFORD STABILITY IF YOU HAPPEN TO GET OFF ON A SHOULDER IF YOU' RE IN A CURVE, THE CENTRIFUGAL FORCE GOING ONE WAY AND THE SUPERELEVATION IS SUPPOSED TO ASSIST YOU ON THE ROADWAY AND ON THE SHOULDER. THAT MAKES SENSE TO ME AND I'M NOT AN ENGINEER. IT'S NO QUESTION THAT THE SLOPE WAS THE WRONG WAY. ONE OF THE EXPERTSAT LEAST HE WAS JUST A FACT WITNESS, BUT HE WAS AN ENGINEER FOR THE STATE, I THINK MR. DOCKENS, SAID IT WAS DESIGNED FOR THE SUPERELEVATION BUT BUILT TO HANDLE THE DRAINAGE ON BOTH SIDES LIKE MOST ALL OF THE ROADS ARE. THERE WAS NO EVIDENCE PUT IN ANYTHING THAT THE DRAINAGE WAS MORE CRITICAL THAN THE SAFETY AFFECT OF THE SUPERELEVATION ON THE SHOULDER. WE DON'T HAVE A MYER'S [Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986)] SITUATION WHERE IT WOULD COST MILLIONS OF DOLLARS TO SUPERELEVATE THAT SHOULDER ON THAT LITTLE 400-FOOT CURVE, TO ME IT WOULD HAVE BEEN A PRETTY NOMINAL THING, WHEN THEY IMPROVED THE HIGHWAY IN '82 AND OVERLAID IT, WIDENED THE LANES, IT WOULD HAVE MADE IT SAFER IN THE OPINION OF DUANE EVANS, THE EXPERT. MR. WALTON SAID IT WOULD MAKE NO DIFFERENCE BECAUSE AS LONG [SIC] THE FRICTION IS THERE IT WOULDN'T MAKE ANY DIFFERENCE.
I THINK THE BETTER REASONED EXPERT OPINION IS MR. EVANS. I ACCEPT IT, RIGHTLY OR WRONGLY, I ACCEPT IT AND I THINK THAT'S THE BETTER OPINION FOR THESE FACTS, THAT THE REVERSE SUPERELEVATION BEYOND THE SEVEN PERCENT PRESENTED A HAZARD TO EVEN A PRUDENT DRIVER AND HAD A CAUSE AND EFFECT OF MR. POCHE LOSING CONTROL WHEN HE TRIED TO RE-ENTER THE HIGHWAY. SO THE COURT FINDS THE STATE AT FAULT. THE COURT FINDS THAT THE PLAINTIFF IS NOT FREE FROM FAULT EITHER. I'VE APPLIED THE STANDARD SET FORTH IN THE SUPREME COURT CASE IN WATSON [Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985)], TALKING ABOUT COMPARATIVE FAULT, AND I WENT OVER IT SEVERAL TIMES. I THINK MR. POCHE WAS EQUALLY AT FAULT IN THIS ACCIDENT. THE EXPERTS INDICATED A HIGH RATE OF SPEED, THEY DIDN'T OFFER MUCH TO BACK THAT UP. MR. POCHE'S OWN TESTIMONY IS THAT HE PROBABLY ENTERED THE CURVE AT 45, DID NOT REDUCE HIS SPEEDAND I THINK THE RECORD, WHEN YOU LOOK AT IT AS A WHOLE, PROBABLY INDICATES HE WAS PROBABLY GOING A LITTLE MORE THAN 45 AND DIDN'T REDUCE IT AS HE WENT INTO THE CURVE, HE SHOULD HAVE. PLAINTIFF'S OWN EXPERTMR. DURANT, YOU SHOULD GIVE MR. EVANS SOME CREDITHE INDICATED, IN RESPONSE TO ONE OF THE QUESTIONS AS TO WHAT THE PLAINTIFF COULD HAVE DONE, HE SAID HE COULD HAVE REDUCED HIS SPEED WHILE GOING AROUND THE CURVE. I THINK THAT WAS A FACTOR AS MUCH AS, IN MY OPINION, THE DECREASED SUPERELEVATION.
NO QUESTION, IT WAS A CATASTROPHIC INJURY, I'M NOT GOING TO GO THROUGH ALL THE DETAILS. I'VE REVIEWED THE MEDICAL, PRIMARILY THROUGH MR. VOOGHT'S DEPOSITION, AND IT WAS TESTIFIED *917 TO THE COURT, HE HAD A CRUSHED VERTEBRAE AT THE EIGHT [SIC] THORACIC LEVEL, CAUSING HIM PARALYSIS FROM THE RIB CAGE DOWN AND THAT'S A LIFETIME SITUATION, FROM ALL INDICATIONS. IT CERTAINLY ENTITLES THE PLAINTIFF TO THE MAXIMUM IN GENERAL DAMAGES, $500,000.00, FOR PAIN AND SUFFERING, LOSS OF LIFESTYLE AND MENTAL ANGUISH, NO QUESTION. THE COURT FINDS MRS. POCHE IS SEVERELY DAMAGED AS WELL, AND AWARDS A $100,000.00 FOR LOSS OF CONSORTIUM. BEYOND THAT, AND IN ACCORDANCE WITH 32:5106, THE PAST LOSS OF WAGES $201,210.00 FUTURE LOSS, $582,172.00. THE COURT ACCEPTS THE TESTIMONY OF DR. RICE AS TO THOSE FIGURES. PAST ATTENDANT CAREI THINK MR. VOOGHT WAS A LITTLE GENEROUS, IN MY OPINION, ON THATAND THE COURT AWARDS $65,600.00, EQUATING TO ROUGHLY ABOUT FOUR AND A-HALF YEARS. I WENT THROUGHMR. POCHE WAS IN THE HOSPITAL AND REHABILITATION FOR A PERIOD OF TIME, I CALCULATED THAT AS FOUR AND A-HALF YEARS OF PAST ATTENDANT CARE AT $65,600.00. PAST MEDICAL EXPENSES, WHICH WAS UNREBUTTED, I DIDN'T GO THROUGH AND DOUBLE CHECK THAT ADDITION, I MEAN IF YOU DO WE'LL CHANGE THE FIGURES, $230,560.87. OF COURSE, THE MORE DIFFICULT THING IS PROJECTING THE FUTURE, THE FUTURE IS ALWAYS SPECULATIVE. MR. VOOGHT, IN MY OPINION, WAS A LITTLE SPECULATIVE ABOUT SOME THINGS, I'M NOT SURE SOME OF THE THINGS CONTAINED IN HIS COSTS ARE REALLY APPLICABLE, SUCH AS THE FOUR-WHEELERS AND THE TRANSPORTATION, QUITE FRANKLY. I'VE LOOKED AT IT AND THOUGHT ABOUT IT LONG AND HARD AND THE COURT AWARDS $1,750,000.00 IN FUTURE MEDICAL AND ATTENDANT CARE.
As to general damages, Mr. Poche suffered a crushed vertebrae at the eighth thoracic level and is paralysed from the rib cage down and will be so for the rest of his life. The court need not recite in detail the total and complete change in lifestyle which accompanies such an injury. Suffice it to say, we are convinced that $3,000,000.00 is the lowest reasonable amount to compensate Mr. Poche in general damages. Of course, this award is subject to a reduction of 50 percent because of the comparative fault found by the trial judge and affirmed by this court.
Therefore, for the above and foregoing reasons, the judgment of the trial court as amended to increase the general damage award and to allow interest from date of judicial demand according to law is affirmed. Costs are assessed against the defendant in the amount of $1956.77.
AMENDED AND AFFIRMED.
LeBLANC, J., concurs and assigns reasons.
LeBLANC, Judge, concurring.
I respectfully concur in the result reached by the majority.
The trial court's findings as to the existence of a defect and as to causation are factual determinations which cannot be disturbed in the absence of manifest error. In Stobart v. State Through DOTD, 617 So.2d 880 (La.1993), the Supreme Court delineated the standard of review for factual findings.
[T]he issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.... `[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been *918 sitting as the trier of fact, it would have weighed the evidence differently.' [citations omitted] 617 So.2d at 882-883.
Under the applicable standard of appellate review, I am unable to conclude that the trial court committed manifest error. Accordingly, I concur in the result reached in the majority opinion.