# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-771

**HARRIETT ARDALA YATES, ET AL.**

**VERSUS**

**STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NUMBER 71,050
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLIE COLOMBARO WOODARD
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billie Colombaro Woodard, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**AFFIRMED IN PART; JUDGMENT OF JULY 25, 2002 VACATED.**

John Layne Hammons
Nelson, Hammons & Self
705 Milam Street
Shreveport, Louisiana 71101
(318) 227-2401
Counsel for Plaintiffs/Appellants:
    Harriett Ardala Yates
    Wayne Edward Yates

Charles S. Norris, Jr.
Attorney at Law
Post Office Box 400
Vidalia, Louisiana 71373
(318) 336-1999
Counsel for Plaintiffs/Appellants:
    Kathrin Yates Nielson
    Dawayna Yates Sanders
    Wayne Edward Yates, Jr.
    Mary Elizabeth Yates

Richard P. Ieyoub, Attorney General
Edward M. Campbell
Special Assistant Attorney General
1721 Washington Street
Natchitoches, Louisiana 71547
(318) 560-3027
Counsel for Defendant/Appellee:
    State of Louisiana Department of
    Transportation & Development

James Earl Calhoun
State of Louisiana, Division of Risk
Litigation
Post Office Box 1710
Alexandria, Louisiana 71308-1710
(318) 487-5944
Counsel for Defendant/Appellee:
    State of Louisiana Department of
    Transportation & Development

WOODARD, Judge.

Mrs. Yates and her family appeal a judgment, relieving DOTD of liability for injuries she received in a car accident on Louisiana Highway 478. We affirm the trial court's judgment entered in accordance with the jury verdict, and vacate the judgment of directed verdicts on July 25, 2002.

\* \* \* \* \*

This action arises from a single-car accident on March 10, 1998 on Louisiana Highway 478 (Water Well Road) in Natchitoches Parish. Mrs. Harriet Ardala Yates was driving when her vehicle left the roadway and crashed into a tree, injuring her. She contends that she lost control because of the highway's defects. Accordingly, she and her family filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD). A jury heard the case.

After the parties presented all their evidence, the trial court granted a directed verdict on her claims for past medical expenses of $324,506.22 and past and future lost income of $370,738.00. However, the jury found that DOTD was not liable. Specifically, it found that the highway did not contain defects which posed an unreasonable risk of harm. The trial court denied the Plaintiffs' subsequent motion for a judgment notwithstanding the verdict (JNOV) or a new trial.

Mrs. Yates and her family appeal the jury's determination and the trial court's denial of a JNOV or a new trial. They, also, assign error to the trial court's decision that DOTD did not waive its "remedial action defense" when it failed to object to one of the Plaintiffs' exhibits which referenced DOTD's subsequent patching and resurfacing of the roadway. Furthermore, Mrs. Yates asserts that since DOTD did not appeal the directed verdict, it is a final judgment which she can execute, regardless of the jury's verdict of no liability.

Thus, we must examine the record and decide if it reveals a reasonable basis for the jury's determination; determine whether DOTD waived its right to exclude evidence of subsequent remedial measures; and address the effects of the judgment, granting the directed verdicts.

1

* * * * *

**STANDARD OF REVIEW**

To prove DOTD's liability, Mrs. Yates had the burden of proving, by a preponderance of evidence, the following four elements: 1) DOTD had custody of the highway; 2) the highway was defective because it had a condition which created an unreasonable risk of harm; 3) DOTD had actual or constructive notice of the defect and failed to take corrective measures; and 4) the defective highway was a cause-in-fact of Mrs. Yates' injuries.[1]

There is no dispute that DOTD had custody of Highway 478. Thus, the first question for the jury concerned whether it was defective. The jury answered, "No" to: "Do you find that Louisiana Highway 478 contained a defect which created an unreasonable risk of harm to Harriet Yates on March 10, 1998?"

Since a negative finding on any one of the elements precludes liability,[2] an affirmation of the jury's determination on this issue would pretermit any analysis of the last two elements. Thus, initially, we review the jury's conclusion that Mrs. Yates did not prove, by a preponderance of the evidence, that the highway had defects that created an unreasonable risk of harm to her. This inquiry requires the factfinder to "balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair."[3] We must defer to the factfinder's conclusion on this issue unless it is manifestly erroneous.[4]

**DEFECTIVE HIGHWAY**

*Lay Testimony*

Mrs. Yates' husband and two of her daughters went to the accident site a few days after it happened and took some photographs. Mr. Yates testified that ruts and potholes pervaded the roadway and that it was rough and uneven. He said that there

---

[1] *Petre v. State ex rel. Dep't of Transp. & Dev.*, 01-876 (La. 4/3/02), 817 So.2d 1107.

[2] *See Id.*

[3] *Reed v. Wal-Mart Stores, Inc.*, 97–1174, p. 5 (La. 3/4/98), 708 So.2d 362, 365.

[4] *Id.*

2

was, virtually, no shoulder at the point where Mrs. Yates left the road, and he described the gully or ditch that ran alongside the roadway. Both daughters, also, testified that there were potholes in the road and that the asphalt was broken or "chewed up."

Additionally, Mrs. Yates testified:

> [The road] was really rutted out. It was like you know what happens when the log trucks get on the road and they just wallow (sic) a road out you know. . . . Now I don't know, I, I hit the pothole, I don't know if uh, I just went a little too far over and my tire went off the road and there was nothing there to help me, you know, and it was awfully rough and awfully rutted. . . . There was not a shoulder, not paved or otherwise. On the area where I went off it was just non existent.

*Expert Testimony*

Mr. Mark Tooke, a professional land surveyor, prepared a plat based on the accident report, photographs, and a visit to the site a couple of years after the accident, which both the Plaintiffs' and Defendants' experts used in their investigations. All of the experts saw the pictures Mr. Yates took days after the accident and viewed the police accident report. The Plaintiffs introduced two experts' testimonies, Dr. Olin K. Dart, an expert in highway design and maintenance and Mr. A. J. McPhate, an expert in mechanical engineering and accident reconstruction. Dr. Dart testified:

> Well the road has these defects in it in terms of it's uh, uh, surface irregularities in the irregularities in her lane of travel. There was presence of potholes and these kind of uh, and the steep slope that, that is next to the pavement that if she engaged her wheel into one of these irregularities such that it pulled her to the right that could have got her on that steep slope from which she couldn't recover. . . . Appears to be some significant base problems in terms of like that its rutting out and displacing material. . . . that whole area through there has a quite a bit of distress. The pavement slopes excessively towards the ditch in that point, and there is again the distortion, unevenness of the surface.

Similarly, Mr. McPhate testified that there was lane rutting and wheel depressions, although he saw no significant potholes. He surmised that Mrs. Yates must have encountered some defect in the roadway because of the sharp angle that her car left the roadway.

DOTD introduced its own expert's testimony. Dr. John Mounce, an expert in civil engineering, accident reconstruction, and highway design and maintenance, visited the accident site on April 4, 2001 and August 15, 2001. He testified:

> I do feel like that while this, this roadway is not the best roadway that we have out there, it [sic] the classification of the roadway, the volume on the roadway; it does not in my opinion or at least with any information or evidence which I can point to should not have posed any unreasonable hazard to any motorist driving down that road either by a pavement defect, potholes, or ruts, or depressions or by any fixed objects existing in a required clear zone adjacent to the roadway such as the tree which Ms. Yates impacted.

Further, Dr. Mounce, specifically, referenced specific research, studies, and guidelines used in determining whether potholes, rut depressions, and other discontinuities in roadways were unreasonably dangerous. He noted that "unreasonably dangerous" is a relative term and the standards take into account factors such as the age of the road and the type of road, for example, interstate highway versus a rural collector road. He saw no defect on this roadway that he deemed to be unreasonably dangerous. Ultimately, he concluded:

> [F]rom what you can see in these photos and, and based on what I know about these surface discontinuities, there's nothing here that should have caused loss of control. That they should at reasonable speeds been [sic] something that could have been traveled over without any [sic] it inducing any vibration, severe vibration or requiring any steering corrections.

The jury was adequately instructed of its responsibility and its discretion concerning weighing expert testimony:

> You should consider each expert opinion received into evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

The jury viewed for themselves Mr. Yates' photographs of a portion of the roadway near the accident site. They heard the testimonies of Mrs. Yates and her

4

family.  They listened to the experts' testimonies and concluded that the road did not present any unreasonably dangerous defects.

We find a reasonable basis in the record for the jury's determination. Credibility is a question best left to the jury.[5]  Finding no manifest error, we will not disturb its decision.

Given our conclusion that the jury's verdict is not manifestly erroneous, likewise, we find no error in the trial court's denial of Plaintiffs' motion for JNOV or, alternatively, a new trial.

SPOLIATION/REMEDIAL MEASURES

Louisiana Code of Evidence Article 407 provides:

> In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.  This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.

Plaintiffs' expert land surveyor prepared, and Plaintiffs introduced in evidence, a plat which referenced the condition of the roadway at the accident site when he visited it on March 20, 2000, which was after DOTD had resurfaced the roadway. DOTD did not object, and, both, Plaintiffs' and Defendants' experts referred to it. However, in closing argument, Plaintiffs' counsel attempted to use this exhibit to refer to DOTD's repair and resurfacing of the roadway after the accident.  The court agreed with defense counsel that this was inappropriate, as it implied that DOTD was liable, and prohibited counsel from making any further similar references.  However, Plaintiffs assert that, by failing to object to the exhibit, DOTD waived its right to exclude evidence of subsequent remedial measures.

We find no merit to this argument because, before the trial began, counsel and the court had a dialogue, concerning the admissibility of any evidence of DOTD's subsequent remedial measures.  Although the discussion, specifically, concerned the

---

[5]*Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84.

admissibility, not of the plat, but of photographs taken of the accident site after the road had been patched and resurfaced, the court's reasoning applied to both. In that discussion, it suggested that the photographs could be admitted for the experts to use them in their testimonies as long as they were not suggesting that the remedial measures proved DOTD's culpability:

> The Court: Well it does certainly seem that if there were photographs that were taken by experts who uh, for either side that were taken later on, the State may come in and make repairs and I can't keep those photographs from being used. *They just can't use them to make the point that remediation . . . So if they're not introduced for the purpose of proving negligence then they're admissible. . . I could see someone who's an expert who went out and took their own pictures and when they testify they need to refer to their own pictures. I could see relevance to that.*

> Defense Counsel: Then I assume my motion is, well I don't know, that has not, we have not arrived at that point. The reason I raised the objection was because of what happened during the voir dire process.

> The Court: Right.

> Defense Counsel: And I remember that I did ask the Court does that mean that the Court will subsequently rule that these things are admissible and it's my feeling that the Court will make such a ruling.

> The Court: I will make rulings as the issues come up.

(Emphasis added.) However, Plaintiffs never attempted to introduce these particular photographs in evidence. Therefore, the trial court never ruled on their admissibility. Likewise, they made no attempt to use the plat exhibit as *evidence* of remedial measures during testimony. Not until Plaintiffs' closing argument did they assert that DOTD had waived its right to have subsequent remedial measures evidence excluded by not objecting to the plat's introduction into evidence, and attempt to use it to show that DOTD made some repairs to the road <u>after</u> the accident. Thus, we agree with the trial court's response to Plaintiffs when it refused to allow this reference:

> Well, but you know in the pictures that you ended up not introducing into evidence at all, which I had never ruled that were not admissible, you just chose not to introduce them that showed the repair work on it, the reason that, that you perceived that I might have a problem with some it is because it showed repair work and then for some

6

reason you, you chose not to pursue that. . . . And I think that the, that the State probably felt that the issue was resolved and that no discussion of the repair work was going to be made and that's certainly the way that I felt and when I heard you saying it then I was surprised about it. . . . I don't think I'm gonna let you go around through the back door and do what you couldn't do with the photographs.

Additionally, in Plaintiffs' motion for a new trial, as well as in their brief to this court, they argue that DOTD's resurfacing so soon after the collision, effectively, acted as an intentional act which purposely concealed the true nature of the roadway, thus, constituting "spoliation." However, they did not attempt to argue spoliation in the trial court. In fact, they conceded that photographs of the road after repairs could not be introduced to show DOTD's negligence or to prove that the road was defective before the repairs. Furthermore, they proffered no evidence on spoliation. Instead, they assert that DOTD's action, so soon after the accident, is sufficient for us to infer that it was intentional. We cannot agree.

The only evidence in the record of any repairs consists of DOTD's daily logs, which note that, on March 13, 1998, DOTD repaired some potholes around the accident site, and on March 26, it patched some potholes along the same area. However, the records, also, indicate that DOTD had been doing similar repair work in this area, continuously, over a three-month period before Mrs. Yates' accident. Furthermore, Plaintiffs proffered no testimony describing or interpreting DOTD's records. Without testimony or other interpretive aids, we have no way of knowing the extent of the repairs DOTD performed on any given date.

**DIRECTED VERDICTS JUDGMENT**

At the close of the evidence, Plaintiffs moved for directed verdicts on general damages, comparative fault, loss of income, and past medical expenses. Concerning the latter two issues, they likened the circumstances in the instant case to those in *Bijou v. Alton Oschner Medical Foundation*[6] because in both cases, there was a statutory limit on the quantum of damages that could be assessed against the defendants. In *Bijou*, the statutory limit was in the Medical Malpractice Act. In the

---

[6]95-3074 (La. 9/5/96), 679 So.2d 893.

instant case, there is a statutory limit because the State of Louisiana is the Defendant.[7] However, *Bijou* is distinguished from the case at bar because its defendants had already admitted liability when the plaintiff moved for summary judgment on the damages issue. In the instant case, the jury had not, yet, determined liability. Thus, *Bijou* is not applicable.

The trial court in the instant case denied the motions concerning general damages and comparative fault but granted the directed verdicts on loss of income and past medical expenses because the parties had stipulated to past medical expenses, and DOTD presented no evidence to contradict Plaintiffs' expert's testimony concerning Mrs. Yates' loss of income. However, subsequently, the jury determined DOTD had no liability for Mrs. Yates' injuries and, thus, impliedly no obligation to pay any of her damages.

Notwithstanding, the Plaintiffs argue that the judgment on these two issues is, now, final and exigible. They correctly point out that there is no resolutory condition in the judgment. However, to enforce the judgment, absent a finding of liability, would be an absurdity and patently unjust.

It is apparent from the record that the parties' intentions were to relieve the jury of having to make futile calculations of damages. In other words, as long as the quantum exceeded the statutory limit, the Plaintiff would receive the same amount (the statutory limit) regardless of how much more the jury awarded. The record reveals that the trial court's intention was, only, to find that the quantum of Mrs. Yates' damages, undisputably, surpassed the statutory cap.

Thus, in the interests of justice, we vacate the trial court's judgment on the directed verdicts.[8]

## CONCLUSION

Finding no manifest error in the jury's determination, we affirm its finding, as well as the trial court's denial of a JNOV or new trial. Furthermore, we find no error in the trial court's decisions, concerning remedial measures evidence. Thus, we affirm its July 26, 2002 judgment which is in accord with the jury's verdict. Lastly, we

---

[7]La.R.S. 13:5106(B)(1).

[8]La.Code Civ.P. art. 2164.

vacate its July 25, 2002 "Judgment on Motion for Directed Verdict." We assign costs of this appeal to Plaintiffs/Appellants.

**AFFIRMED IN PART; JUDGMENT OF JULY 25, 2002 VACATED.**