679 So.2d 893 (1996)
Fredrek BIJOU
v.
ALTON OCHSNER MEDICAL FOUNDATION d/b/a Ochsner Foundation Hospital, Tulane University Medical Center, and Edward S. Connolly, M.D.
No. 95-CC-3074.
Supreme Court of Louisiana.
September 5, 1996.
Rehearing Denied October 4, 1996.
*894 Charles A. Kronlage, Jr., Kathleen C. Cresson, New Orleans, for applicant.
Charles T. Williams, Jr., New Orleans, Bruce A. Cranner, John E. Baker, Blue, Williams, L.L.P., Metairie, for respondent.
JOHNSON, Justice.[*]
We granted writ of certiorari to determine whether there exists a genuine issue of material fact on the issue of damages under the facts of this medical malpractice case, so as to warrant the granting of a Motion for Summary Judgment. The trial court granted plaintiff's Motion for Summary Judgment on the issue of damages, and awarded to plaintiff the $500,000.00 limit for general damages provided under La.R.S. 40:1299.42, as well as future medical care and benefits. The trial court also granted plaintiff's Motion for Summary Judgment on the issue of causation, finding that the "liability" imposed by La.R.S. 40:1299.44(c) precludes the defendant from contesting causation. Finding that the amount of damages is a genuine issue of material fact, the court of appeal set aside the trial court's judgment. For reasons stated below, we reverse the court of appeal's decision.

FACTS AND PROCEDURAL HISTORY
On October 24, 1991, plaintiff, Fredrek Bijou, was a patient in the intensive care unit of Ochsner Foundation Hospital (Ochsner). Mr. Bijou was scheduled for surgery at 7:00 a.m. on October 25, 1991, to relieve spinal cord compression. Dr. Edward S. Connolly was Ochsner's neurosurgeon scheduled to perform the surgery.
On the evening of October 24, 1991, Bijou's condition rapidly declined. The nurses and doctors at Oschner failed to notify Dr. Connolly of Bijou's declining condition. Consequently, sometime between the evening of October 24, 1991 and the early morning of October 25, 1991, Bijou became tetraplegic, also called quadriplegic, permanently depriving him of use of his entire body from the *895 neck down. During his deposition testimony, he established that he lost all bodily functions, and despite his vegetative state, he has not been pain free. He experienced side effects such as the development of kidney stones, persistent and severe muscle and bladder spasms, headaches, dyslexia, bed-wetting, colon polyps, hemorrhoids, urinary tract infections, bedsores which required plastic surgery, pressure sores and dizziness. As a result of his condition, he also required an indwelling (full-time), foley catheter.
Mr. Bijou also visited with a psychologist and testified that he has contemplated suicide, and therefore believes that he may need to resume visiting with a psychologist or psychiatrist. Also, because he is totally deprived of all bodily functions, he is totally dependent on others. He requires an aide or caretaker on a 24-hour a day basis. However, due to the expense of hired caretakers, he hires caretakers to work only 12-hour shifts. His wife cares for him the remaining 12 hours. Mr. Bijou requires use of medical items such as a Roho chair cushion in the shower, a Hoyer lift, a special bed and mattress, a special van, and has need of a voice activated phone to accommodate his physical limitations. He regularly takes prescription medication for his numerous ailments. He also takes antidepressants. The deposition of Dr. Nedda Hendler, plaintiff's treating physician, corroborates Mr. Bijou's testimony regarding his medical condition and needs.
Bijou was 41 years old at the time of this incident. He was married and had an adopted nine-year old son. Prior to his becoming tetraplegic, he was actively involved in boy scout activities with his son. He participated with his son in camping, fishing, and field trips, and in attending football games. Bijou, his wife and son also engaged in outdoor activities such as bicycling, swimming, and playing racquetball on an average of four times a week.
Bijou filed a medical malpractice claim, naming Ochsner, Dr. Connolly and the Tulane University Medical Center, as defendants. In a deposition, Dr. Connolly made the following admissions:
(1) that Bijou's tetraplegia was caused by the spinal cord compression which had been diagnosed on his admission to Ochsner, and which Dr. Connolly planned to relieve by the operation scheduled for October 25, 1991;
(2) the failure of the nurses and duty doctors to contact him when Bijou's neurological condition began to decline was below the standard of care required;
(3) if he had been timely notified, he would have, and could have arranged for immediate emergency surgery;
(4) if he had performed such emergency surgery, it would have prevented the tetraplegia.
Following this testimony, Ochsner tendered to Bijou its $100,000 limits of liability as primary health care provider. Bijou accepted this settlement but reserved his rights against the Louisiana Patient's Compensation Fund ("Fund"), and made demand on it for the remaining $400,000 due for general damages under the statutory limitation of $500,000 provided by the Medical Malpractice Act. Plaintiff also demanded all medical and related expenses incurred for treatment and care of his tetraplegia, and judgment decreeing him to be in need of medical care beyond the trial date. Ochsner and Bijou filed a Joint Petition for court approval of the settlement, which the trial court granted.
The case was set for trial on December 4, 1995. On October 9, 1995, plaintiff filed a Motion for Summary Judgment on the following three parts:
(1) Finding that the "liability" imposed by La.R.S. 40:1299.44(c) was for plaintiff's tetraplegia, the foreseeable harm caused by the malpractice, and that causation for that harm could not be contested.
(2) Finding that plaintiff was entitled to judgment for the $500,000 limit for general damages provided under La.R.S. 40:1299.42, subject to a credit of $100,000, reflective of payment by Oschner.
(3) Finding that Bijou was in need of future medical care and benefits reasonably related to his tetraplegic condition.
Following oral argument on this Motion for Summary Judgment, the trial court rendered judgment in favor of Bijou on all three parts. The Fund applied for supervisory *896 writs to the Fifth Circuit Court of Appeal, contending that quantum or damages is a purely factual issue which should be decided by a jurynot by summary judgment. The Fifth Circuit granted writ. Finding that the amount of damages is a genuine issue of material fact, the court of appeal set aside the trial court judgment. Bijou appealed to this court to make the following determinations:
1. Whether by virtue of Ochsner's payment of its $100,000 insurance policy limit, the Fund is precluded from contesting liability?
2. Whether a summary judgment is appropriate to decide plaintiff's damages?
3. Whether Bijou is entitled to future medical care and related benefits under La.R.S. 40:1299.43(A)(1)?

LAW AND ANALYSIS
In 1975, the Louisiana legislature enacted the Louisiana Medical Malpractice Act, La.R.S. 40:1299(41), to establish a framework for compensating individuals who are injured as a result of medical malpractice committed by qualified health care providers. Russo v. Vasquez, 648 So.2d 879, 883 (La. 1995). Pursuant to the Medical Malpractice Act, the liability of a single qualified health care provider is limited to $100,000 for a medical malpractice victim's injury or death. Russo at 881. Any damages in excess of $100,000 may be recovered from the Louisiana Patient's Compensation Fund, but any such damages may not exceed $500,000. Russo at 881. The Medical Malpractice Act expressly states that payment of the $100,000 statutory policy limits by a health care provider is deemed an admission of liability. See La.R.S. 40:1299.44(C)(5). La.R.S. 40:1299.44(C)(5) provides:
"... In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established (emphasis added) where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars."
This court has previously addressed this issue and unequivocally supports this statutory provision. See Pendleton v. Barrett, 675 So.2d 720, 725 (La.1996), rehearing denied (June 28, 1996); Russo v. Vasquez, 648 So.2d 879, 883 (La.1995); Jones v. St. Francis Cabrini Hospital, 652 So.2d 1331 (La.1995); Stuka v. Fleming, 561 So.2d 1371, 1374 (La. 1990). Further, once the health care provider has admitted liability up to the statutory maximum, the Fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial. Pendleton v. Barrett at 725. The only remaining issue is the damages, if any, owed by the Fund. Id.
In the present case, the health care provider, Ochsner, paid to Bijou its $100,000 policy limit. Following well-established statutory and judicial precedent, Ochsner is deemed to have admitted liability by virtue of its payment of the policy limit. Because Ochsner admits liability, the Fund is precluded from contesting liability. Accordingly, the only issue remaining between Bijou and the Fund is damages. The court will now address the question of whether Ochsner's admission of liability satisfies Mr. Bijou's burden of proving a causal relationship between the acts or omissions constituting malpractice, and the resulting injuries.
Liability under La.R.S. 40:1299(C)(5) is admitted and established as to damages emanating from the original apparent consequences or harm from the medical malpractice. Pendleton v. Barrett at 729. Original or primary harm is such risk and consequential damages that are encompassed by the health care provider's duty not to commit medical malpractice, and which directly result from the health care provider's breach of duty or medical malpractice. Id. In the instant case, Mr. Bijou's original or primary harm is tetraplegia. By virtue of its payment of the statutory policy limit of $100,000.00, Ochsner is deemed to have admitted to liability for Mr. Bijou's tetraplegic condition. Therefore, the causal relationship between Ochsner's malpractice and Mr. Bijou's tetraplegic condition is established.
*897 The court now turns to the issue of whether summary judgment is appropriate to decide the issue of damages. The Fund argues that the trial court erred in awarding $500,000.00, the medical malpractice statutory maximum, by way of a partial summary judgment in favor of Mr. Bijou. It is the Fund's position that while La.Code of Civil Procedure Article 966 does authorize partial summary judgments in certain limited situations, the issue of damages is not one of those situations. According to the Fund, the amount of damages is a question of fact to be properly determined by the trier of fact.
A motion for summary judgment is proper when the pleadings, depositions, answers and omissions on file, together with the affidavits submitted, show that there is no genuine issue of material fact, so that the mover is entitled to judgment as a matter of law. When reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law on the facts before the court, summary judgment is warranted. Reynolds v. Select Properties Limited, 634 So.2d 1180 (La.1994); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). As the Fund states, the amount of damages to be awarded is a question of fact. However, where the facts have been established by the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law, a summary judgment shall be rendered. See L.C.C.P. art. 966(B).
As a matter of law, Mr. Bijou is entitled to past and future wage losses, and compensation for pain and suffering. His past wage loss alone is $185,987.00. Mr. Bijou maintains that based on a report of Dr. Melville Wolfson, an Economist, the present value of his future wage loss is $744,032.00. Dr. Wolfson's report on past and future wage loss is based on Mr. Bijou's actual earnings during his eleven years of employment with Hilton Hotels, during which time he advanced to Director of Purchasing at the New Orleans Downtown Hilton, with annual wage increases. At the time of the incident in 1991, Mr. Bijou earned a salary of $44,122.00. Mr. Bijou notes that even if Dr. Wolfson was fifty percent wrong in his report of future wage losses, plaintiff's future wage loss would be at least $350,000.00, which, when combined with his past wage loss of $185,987.00, would equal a total wage loss in excess of $500,000.00. These amounts exceed $500,000.00 without consideration of even any minimal damages for pain and suffering.
Mr. Bijou maintains that in recent Louisiana cases involving similar injuries, and even for those which were less catastrophic, awards for this element of general damages have been at least four times the $500,000.00 for which Mr. Bijou seeks summary judgment.[1] The evidence clearly establishes that Mr. Bijou's damages clearly exceed $500,000.00. He was formerly a healthy, physically active, 41-year old man. As a direct result of Ochsner's admitted malpractice, he is permanently deprived of the use of his entire body from the neck down. Under the facts and circumstances of the instant case, the court holds that there exists no genuine issue of material fact on the issue of whether Mr. Bijou is entitled to the statutory limit of $500,000.00 for medical malpractice victims. This holding will eliminate the need for unnecessary litigation on this particular issue, and further the courts' general interest in promoting judicial economy. Accordingly, the court hereby reverses the court of appeal's decision.
Mr. Bijou also asserts claims for future medical care and related benefits. La. R.S. 40:1299.43 provides that medical malpractice *898 victims may be awarded future medical care and related benefits, payable by the Fund, once a judgment is entered in favor of a patient who is found to be in need of the same. "Future medical care and benefits", for the purpose of the Medical Malpractice Act, means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services after the date of the injury. La.R.S. 40:1299.43(C). Payments for medical care and related benefits shall be paid by the patient's compensation fund without regard to the five hundred thousand dollar limitation imposed in La.R.S. 40:1299.42. La.R.S. 40:1299.43(D).
This court has previously held that the district courts are not vested with original jurisdiction or decision-making responsibility over future medical care claim. Kelty v. Brumfield, 633 So.2d 1210 (La.1994) rehearing denied, (Feb. 25, 1994). In Kelty v. Brumfield, M.D., the court determined that the statutory provisions of the Medical Malpractice Act vests exclusive jurisdiction of decision-making and supervision over medical and related care claims with the Patient's Compensation Fund Oversight Board ("Board"), the agency legislatively assigned to administer the Fund. Also, La.R.S. 40:1299.43(C) provides:
"Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits ... the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits...."
Thus, after obtaining a favorable court judgment on the issue of future medical care and related benefits, the plaintiff may file a claim with the Board. In the case at hand, the trial court found Mr. Bijou to be in need of future medical care and benefits, and rendered a judgment to this effect. Following Kelty v. Brumfield and La.R.S. 40:1299.43(C), Mr. Bijou should make a claim to the Patient's Compensation Fund Oversight Board for further action and recovery of his future medical care and related benefits claim. This finding renders moot the Fund's argument that the district court's granting of a partial summary judgment on the issue of future medical care and related benefits is improper because it fails to grant at least part of the relief for which Mr. Bijou prays.

DECREE
For the foregoing reasons, we hereby reverse the court of appeal's ruling that there exists a genuine issue of material fact on the issue of damages, and reinstate the judgment of the trial court.
REVERSED.
LEMMON and VICTORY, JJ., concur and assign reasons.
BLEICH, J., dissents.
LEMMON, Justice, concurring.
While summary judgment generally is not appropriate for awarding tort damages, the statutory admission of liability and the statutory limitation on recovery of damages other than medical expenses makes a medical malpractice case different.
The determination of the amount of damages caused by defendant's admitted malpractice is a mixed question of fact and law. Viewing the facts in this record in the light most favorable to the party opposing summary judgment, a court would abuse its discretion, as a matter of law, by awarding damages of less than $500,000. Accordingly, plaintiff is entitled to a summary judgment in the amount of $500,000 as a matter of law.
VICTORY, Justice, concurring.
Although summary judgment would very rarely be appropriate in awarding tort damages, I concur in the result of this case.
NOTES
[*] Pursuant to Rule IV, Part 2, Section 3, J. Watson was not on panel. The panel consisted of Justice Johnson, Chief Justice Calogero, and Justices Bleich, Kimball, Lemmon, Marcus, and Victory.
[1] See Poche v. State through DOTD, 633 So.2d 913 (La.App. 1st Cir.1994) [man awarded $3,000,000.00 in general damages for paralysis from the rib cage down]; Thibodeau v. Mayor & Councilmen, 619 So.2d 595 (La.App. 1st Cir. 1993) [man was originally awarded $3,500,000.00 in general damages for incomplete quadriplegia. The award was subsequently reduced to the $500,000.00 statutory cap]; Jenkins v. State, through DOTD, 619 So.2d 1188 (La.App. 1st Cir.1993) [woman originally awarded $3,000,000.00 in general damages for quadriplegic condition requiring 24-hour attendant care. The award was subsequently reduced to the $500,000.00 statutory cap]; Martino v. Sunrall, 619 So.2d 87 (La.App. 1st Cir.1993) [man awarded $2,500,000.00 for quadriplegic condition requiring 24-hour attendant care].