712 So.2d 300 (1998)
Charles BRAMLET and Mrs. Charles Bramlet
v.
The LOUISIANA PATIENTS' COMPENSATION FUND.
No. 97-CA-1047.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, for plaintiffs-appellees.
George E. Cain, Greg A. Pellegrini, Frilot, Partridge, Kohnke & Clements, New Orleans, for defendant-appellant.
Before GRISBAUM, GAUDIN and DALEY, JJ.
GAUDIN, Judge.
This appeal is concerned with the extent of plaintiffs' burden of proving causation in their attempt to obtain additional damages from the Patients' Compensation Fund after receiving the full statutory $100,000 and an admission of liability from the involved health care provider.
Petitioners here are the surviving widow and children of Dr. Charles Bramlet, who alleged that Dr. Bramlet sustained catastrophic, preventable damage to his heart because of "wasted hours" at Lakeside Hospital.
On September 26, 1987, Dr. Bramlet experienced chest pains and shortness of breath. Being from Lafayette, Louisiana, he was not familiar with New Orleans area hospitals but he knew where Lakeside Hospital was, having seen it and its highway sign as he drove by on Interstate 10. He told his wife, who was also unfamiliar with the location of area hospitals, to drive him to Lakeside Hospital.
Unknown to them, Lakeside Hospital was engaged mainly with obstetrics and gynecology and did not have a normal emergency room. Nonetheless, when the Bramlets arrived there a nurse had Dr. Bramlet put in a wheel chair, taken inside and admitted. He was attended to by a staff physician not accustomed to treating cardiac patients. Dr. Bramlet was administered a drug called diazoxide (hypenstat) which was, according to plaintiffs' expert medical witness Dr. Joseph T. Brierre Jr., "absolutely contraindicated" and "accelerated the degree of myocardial damage and myocardial necrosis."
Although in distress, Dr. Bramlet concluded after several hours that he was not receiving adequate treatment. He asked to be transferred to another hospital, but he was advised that his condition was too critical for him to be moved.
Dr. Bramlet had his wife call a cardiologist in Lafayette, who quickly arranged for Dr. Bramlet to be transported by ambulance to nearby East Jefferson General Hospital. Dr. Bramlet underwent surgery at East Jefferson. He contended that heart muscle damage and the surgery would not have been necessary had Lakeside not admitted him, but had instead immediately had him taken to East Jefferson, which had an emergency room and state of the art cardiac care.
*301 Subsequently, Dr. Bramlet went before a medical review panel, which found Lakeside and its staff personnel not negligent. He sued in the 24 th Judicial District Court and on November 1, 1994, the day Dr. Bramlet died, Lakeside and it insurer admitted negligence and agreed to pay the statutory health care provider maximum of $100,00.00 under the Medical Malpractice Act. This payment was approved by the district judge.
Mrs. Bramlet and the children were substituted as plaintiffs and they proceeded in district court against the Patients' Compensation Fund for $400,000, the balance of the $500,000 statutory cap. On July 8, 1997, the trial judge conducted a hearing in accord with Pendleton v. Barrett, 675 So.2d 720 (La.1996). She granted summary judgment on July 11, 1997 in favor of the Bramlets, finding that his death was contemplated by the original and apparent injury and that damages easily exceeded $400,000, the amount she awarded.
On appeal, The Patients' Compensation Fund contends
(1) that the trial court erred in granting summary judgment as there existed material issues of fact,
(2) that the Pendleton hearing procedure had been overruled byGraham v. WillisKnighton Medical Center, 699 So.2d 365 (La.1997),
(3) that the trial judge gave full recovery without considering the "loss of a chance" theory, and
(4) the amount awarded was excessive.
Pendleton, rendered by the Louisiana Supreme Court on May 31, 1996, held that admission of liability by payment of the policy limits by a qualified health care provider relieves the plaintiff of the obligation of proving causal connection between the admitted malpractice and original and primary harm, but not of causal connection between admitted malpractice and any secondary harm. The Supreme Court stated that it is the duty of the district judge, once he has approved the $100,000 settlement, to distinguish between the original or apparent harm which the admission of liability encompassed and the secondary harms concerning which the plaintiff has the burden of proof. In making this determination, the Supreme Court said, the trial judge shall make a close review of the record consisting of the pleadings, discovery and any trial proceedings. Drawing a line between the two is a chore to be performed by the trial judge. The Supreme Court noted that in most cases, this should not be difficult. Pendleton was a 4-3 decision.
The trial judge in the Bramlet hearing was fully aware of the Pendleton dictates and she followed them. Graham had not then been rendered.
Graham was handed down on September 9, 1997. The Supreme Court stated that in "... many medical malpractice cases, especially those in which causation is truly at issue, involve the loss of a chance of survival or of a better chance of recovery. A Pendleton hearing prior to trial in such a case not only is inefficient, but it also does not relieve the medical malpractice victim of the burden of proving at trial (with much of the same causation evidence) the value of the loss of chance.
"On reconsideration, we choose not to adhere to the Pendleton pre-trial procedure, but to refocus on which party has the burden of proving causation at trial. We now conclude that the legislative intent of liability in Section 1299.44C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000."
In response to the wording in Graham which seems to call for a trial involving the Patients' Compensation Fund at which a malpractice victim would have to prove causation for damages in excess of $100,000, the Bramlets argue that their case did not involve a so-called "loss of chance" or any secondary harm, as did Graham, and that Dr. Bramlet was almost a complete cardiac cripple until he died solely because of Lakeside Hospital's negligence. He was waiting for a heart *302 transplant. Further, appellees contend, the granting of summary judgment was in line with and authorized by Bijou v. Alton Ochsner Medical Foundation, 679 So.2d 893 (La. 1996).
In reviewing the Bramlet medical evidence, the trial judge considered, among other documents, several letters by Dr. Brierre, who is a pathologist and the Director of Laboratories at Our Lady of Lourdes Hospital in Lafayette, a deposition of Dr. Fortune A. Dugan and an affidavit executed by Dr. Edward McGlynn.
Dr. Brierre was highly critical of the delay in effective treatment caused by Lakeside Hospital's negligence. He said that Dr. Bramlet's subsequent heart problems were "... entirely due to the fact that he was handled in such a poor manner by the staff at Lakeside Women's Hospital."
Dr. Dugan, the cardiologist who saw Dr. Bramlet at East Jefferson General Hospital, stated that Dr. Bramlet had a total occlusion of the left anterior descending coronary artery. He was asked: "Is there any way that you could say with any degree of medical certainty that if he (Dr. Bramlet) had been treated with thrombolytic therapy sooner he may have had less disability or less damage?" Dr. Dugan's reply: "There is no way I can say that."
Dr. McGlynn, apparently a resident of Colorado but a licensed cardiologist by the State of Texas, said in his affidavit that Lakeside Hospital was not negligent but that, in any event, Dr. Bramlet's ultimate death was not related to the damage resulting from the alleged delay in treatment.
Two months after Graham, the Louisiana Supreme Court granted certiorari in Greer v. Lammico, 703 So.2d 30 (La.1997), and reversed a Second Circuit judgment, Greer v. Lammico, 688 So.2d 692 (La.App. 2 Cir. 1997). The Second Circuit had reversed a trial court judgment wherein the trial judge had allowed the Patients' Compensation Fund to relitigate the issue of causation after policy limits of $100,000 had been paid and liability admitted by the concerned physician. The jury had not awarded any additional damages; the Second Circuit reversed and awarded $400,000.
The Supreme Court vacated the Second Circuit's judgment and remanded "... to the court of appeal for reconsideration in light of our opinion in Graham ..."
On remand, the Second Circuit cited Graham and sent the case back to the district court for a new trial, Greer v. Lammico, 29,066 (La.App. 2 Cir. 4/13/98), 712 So.2d 598 saying that the plaintiff must prove causation for damages beyond $100,000.
Graham apparently does not condone anything but a trial after a $100,000 payment, at which the malpractice victim must show causation. We see no wording in Graham that would make an exception even for a situation in which it was obvious that the health care provider was 100 per cent negligent and that this fault caused damages far in excess of $500,000. The Bramlet trial judge held a Pendleton hearing, not a trial.
While we are inclined to agree with the judgment in favor of the Bramlet survivors, seeing no manifest error, and with the only dissent in Graham, which included a suggestion that the legislature should take another hard look at LSA-R.S. 40:1299.44(C)(5), we are compelled by Graham to set aside the summary judgment rendered on July 11, 1997 and to remand to the 24 th Judicial District Court for further proceedings including a trial.
SUMMARY JUDGMENT VACATED, REMANDED FOR FURTHER PROCEEDINGS INCLUDING A TRIAL.