743 So.2d 680 (1998)
Jeanette and Max MOODY, individually and on Behalf of Jeffery Moody, et al.
v.
UNITED NATIONAL INSURANCE COMPANY, Dr. Lucius Clay Andrews, et al.
No. 98-CA-287.
Court of Appeal of Louisiana, Fifth Circuit.
September 29, 1998.
Writ Denied December 18, 1998.
Corinne Ann Morrison, Appeal Counsel, John F. Olinde, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, *681 L.L.P., New Orleans, for defendants-appellants.
George P. Hebbler, Jr., Turner, Young, Hebbler & Babin, New Orleans, and Kurt P. Forshag, Metairie, for plaintiffs-appellees.
Before THOMAS F. DALEY, J., and SOL GOTHARD, J., and NESTOR L. CARRAULT, Jr., J. Pro Tem.
NESTOR L. CURRALT, Jr., Judge Pro Tem.
The Louisiana Patient's Compensation Fund and The Louisiana Patient's Compensation Fund Oversight Board, appearing herein through and nominal defendant, Dr. Lucius Clay Andrews (hereinafter "PCF"), appeal a summary judgment in favor of plaintiffs Jeanette and Max Moody, individually and on behalf of Jeffery, Alison, Joshua and Lianne Moody (hereinafter the "Moodys"), finding PCF liable for damages.
The protracted procedural history of this tragic case began on October 14, 1989, when then 14-year-old Jeffery Moody was viciously assaulted by gang members outside the General Cinema Theater behind the Esplanade Mall in Kenner, Louisiana. Theater personnel called an ambulance as well as Mrs. Moody to the scene; Jeffery was taken to the emergency room at St. Jude Hospital by his mother and arrived at approximately 11:00 p.m., one hour after the attack. There he was treated by Dr. Andrews. According to the admission records at St. Jude, Jeffery was initially conscious and able to communicate, and remained so for a period of time. Skull x-rays appeared normal. However, at about 12:30 a.m. he suddenly developed a dilation of his left pupil, rapidly became unconscious and then began posturing. A CT scan was ordered, and Dr. Carlos Pisarello, a neurosurgeon, was called. The scan showed a huge acute extradural hematoma on the left temporal fossa; surgery was immediately ordered, during which surgery Dr. Pisarello removed the hematoma.
The Moodys filed the present matter against Dr. Andrews, Dr. Pisarello, Lifemark Hospitals d/b/a St. Jude Hospital, and their insurers.[1] It was alleged among other things that Dr. Andrews failed to timely diagnose and treat Jeffery; that he failed to timely recognize the presence of intracranial pressure, and failed to timely order appropriate diagnostic studies; that he did not timely request neurological consultation, and failed to intubate and hyperventilate Jeffery. A separate suit against the attackers (who were minors), their families, the theater, and other defendants with ownership interests in the shopping center, was also filed in the district court.
The present matter has proceeded through the district and appellate courts on numerous issues. Among them, a panel of this court held in Moody v. United Nat. Ins. Co., 95-1 (La.App. 5 Cir. 5/10/95), 657 So.2d 236, that the damage limitations of the medical malpractice act were constitutional; that the claims of Mr. and Mrs. Moody were derived from the malpractice injury to their son; that the statutory liability limitation applied to Dr. Andrew's insurer; that the declaratory judgment was appealable; and that Dr. Andrews and his insurer were improperly dismissed from suit after tendering the $100,000.00 individual liability limit, which sum had not been withdrawn from registry of court.
Ultimately, plaintiff did accept the tender made by Dr. Andrews and his insurer for the statutory limits of $100,000.00, plus accrued interest, and this settlement was approved by the court. Plaintiffs then proceeded against the PCF to recover damages in excess of that statutory limit. The PCF sought to file third party demands against the battery defendants, and to consolidate the battery action with the *682 malpractice suit for trial. In separate writ applications, we denied writs on the refusal of the trial court to consolidate the malpractice action with the battery action, or to third party the battery defendants (95-C-283). In 96-C-422[2] we granted writs and ordered the trial court to grant plaintiffs' motion in limine.
Dr. Pisarello and St. Jude filed motions for summary judgment, arguing that because Dr. Andrews had statutorily admitted liability, they should be dismissed. The trial court granted these motions and dismissed those defendants. Subsequently, plaintiffs filed another motion in limine, (along much the same lines as the first), and a motion for summary judgment against the PCF. The summary judgment sought the statutory limit of $500,000.00 in general damages, plus costs of all of Jeffery's medical care and related benefits from the date of malpractice through the date of the trial, future medical care and related benefits from the date of trial onward, plus costs. The parties submitted memoranda and supporting documents, and the matter was orally argued. On August 20, 1998, the district court granted the summary judgment in favor of plaintiffs, holding Dr. Andrews liable for Jeffery's permanent brain damage and resulting quadriparetic condition. The PCF was found liable for the statutory limits of $500,000.00, plus legal interest, subject to a credit for the $100,000.00 previously paid by Dr. Andrew's. The court further held the PCF liable for the costs of all medical care and related benefits from the date of the injury to the date of judgment, in the amount of $1,928,710.70, over and above the statutory cap; and finding that Jeffery is in need of future medical care, found the PCF liable for the cost of all such future medical care and related benefits, with interest, to be paid in accordance with the Louisiana Medical Malpractice Act. The motion for costs was denied, and the motion in limine was held to be moot.
The PCF has appealed this judgment, and plaintiffs have answered the appeal.

ASSIGNMENTS OF ERROR
Defendants urge that the plaintiffs must prove causation, "loss of chance," and the amount of the damages recoverable from the PCF at trial on the meritsthat is, that these issues constitute issues of material fact sufficient to preclude summary judgment.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; McVay v. Delchamps, Inc., 97-860 (La.App. 5 Cir. 1/14/98), 707 So.2d 90. The Fourth Circuit recently summarized the revised law on summary judgment in Davis v. Board of Sup'rs of Louisiana State University, 97-0382 (La.App. 4 Cir. 3/18/98), 709 So.2d 1030:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant.
. . .

*683 An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323, 326.
The amended article 966 substantially changes the law of summary judgment... The jurisprudential presumption against granting the summary judgment was legislatively overruled by La. C.C.P. art. 966 as amended. The supporting documentation submitted by the parties is to be scrutinized equally and the overriding presumption in favor of trial has been deleted. Once the motion for summary judgment has been properly supported by mover, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
A genuine issue of fact is an issue on which reasonable minds could disagree. If reasonable persons could reach only one conclusion based on the state of the evidence, a genuine issue does not remain. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751; McVay, supra. A fact is "material" when its existence, or nonexistence, may be essential to plaintiffs cause of action under the applicable theory of recovery. Smith, supra; McVay, supra.

ANALYSIS
We have carefully reviewed the record in the above case, and conclude that summary judgment is not appropriate in the present case for the following reasons.
This court has recently considered the very issues raised by PCF in the present case. In Bramlet v. Louisiana Patients' Compensation Fund, 97-1047 (La.App. 5 Cir. 5/27/98), 712 So.2d 300, a panel of this court considered a summary judgment in favor of plaintiffs which awarded damages for $400,000.00. There, the plaintiff alleged that he suffered catastrophic, preventable damage to his heart because of "wasted hours" at Lakeside Hospital. The health care provider admitted liability and paid the $100,000.00 maximum. After plaintiffs death, his survivors continued the action against the PCF; the trial judge conducted a hearing in accord with Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720. She granted summary judgment, finding the death was contemplated by the original injury, and that the damages easily exceeded $400,000.00.
The PCF averred there, as here, (1) that the trial court erred in granting summary judgment as there existed material issues of fact; (2) that the Pendleton hearing procedure had been overruled by Graham v. Willis-Knighton Medical Center, 699 So.2d 365 (La.1997); (3) that the trial judge gave full recovery without considering the "loss of a chance" theory, and (4) the amount awarded was excessive. We discussed Graham thusly:
The trial judge in the Bramlet hearing was fully aware of the Pendleton dictates and she followed them. Graham had not then been rendered.

Graham was handed down on September 9, 1997. The Supreme Court stated that in `... many medical malpractice cases, especially those in which causation is truly at issue, involve the loss of a chance of survival or of a better chance of recovery. A Pendleton hearing prior to trial in such a case not only is inefficient, but it also does not relieve the medical malpractice victim of the burden of proving at trial (with much of the same causation evidence) the value of the loss of chance. (sic)
`On reconsideration, we choose not to adhere to the Pendleton pre-trial procedure, but to refocus on which party has the burden of proving causation at trial. We now conclude that the legislative intent of liability in Section 1299.44C(5) was that the payment of $100,000 in *684 settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.'
In response to the wording in Graham which seems to call for a trial involving the Patients' Compensation Fund at which a malpractice victim would have to prove causation for damages in excess of $100,000, the Bramlets argue that their case did not involve a so-called "loss of chance" or any secondary harm, as did Graham, and that Dr. Bramlet was almost a complete cardiac cripple until he died solely because of Lakeside Hospital's negligence. He was waiting for a heart transplant. Further, appellees contend, the granting of summary judgment was in line with and authorized by Bijou v. Alton Ochsner Medical Foundation, 679 So.2d 893 (La.1996).
We then considered the case of Greer v. Lammico, 29,066 (La.App. 2 Cir.1/31/97), 688 So.2d 692. There, the Second Circuit had reversed a trial court judgment wherein the trial judge had allowed the Patients' Compensation Fund to relitigate the issue of causation after policy limits of $100,000.00 had been paid and liability admitted by the concerned physician. The jury had not awarded any additional damages; the Second Circuit reversed and awarded $400,000.00. The Supreme Court, in Greer v. Lammico, 97-0731 (La.11/7/97), 703 So.2d 30, vacated the Second Circuit's judgment and remanded "... to the court of appeal for reconsideration in light of our opinion in Graham ..."
On remand, the Second Circuit cited Graham and sent the case back to the district court for a new trial, saying that the plaintiff must prove causation for damages beyond $100,000.00. Greer v. Lammico, 29,066 (La.App. 2 Cir. 4/13/98), 688 So.2d 692.
We then held in Bramlet:

Graham apparently does not condone anything but a trial after a $100,000 payment, at which the malpractice victim must show causation. We see no wording in Graham that would make an exception even for a situation in which it was obvious that the health care provider was 100 per cent negligent and that this fault caused damages far in excess of $500,000. The Bramlet trial judge held a Pendleton hearing, not a trial. While we are inclined to agree with the judgment in favor of the Bramlet survivors, seeing no manifest error, and with the only dissent in Graham, which included a suggestion that the legislature should take another hard look at LSA-R.S. 40:1299.44(C)(5), we are compelled by Graham to set aside the summary judgment rendered on July 11, 1997 and to remand to the 24th Judicial District Court for further proceedings including a trial.
Bramlet, supra, and Greer, supra, require us to reach the same conclusion in the present case. While we would not go so far as the panel in Bramlet by analyzing the instant proceedings as evidencing no manifest error, nevertheless we are obliged to the same result.
The question of causation is a material issue of fact. See Dussouy v. City of Kenner, 97-1254 (La.App. 5 Cir. 4/28/98), 710 So.2d 1200; also Mayoral v. Middle South Utilities, 618 So.2d 436 (La.App. 5 Cir.1993); Held v. Avondale Industries, Inc., 95-1788 (La.App. 4 Cir. 4/3/96), 672 So.2d 1106.
At the motion for summary judgment in the present case, plaintiffs produced affidavits from two of Jeffery's treating physicians. Dr. Joseph Nadell and Dr. Howard Katz stated that Jeffery's injuries and disabilities are risks associated with the delay in diagnosing and treating epidural hematomas. Defendant introduced the affidavit *685 of Dr. Pisarello which stated that as the surgeon who operated on Jeffery hours after his injury, he believed the rupture to the meningeal artery would likely not have occurred until approximately one hour before the operation, and therefore would not have manifested itself as a massive hematoma at the time Dr. Andrews finally ordered the CT scan. According to Dr. Pisarello, surgery would not have been performed on the patient without the radiographic evidence of an epidural hematoma.
Our de novo review of the proceedings requires us to conclude there is an unresolved issue of material fact under Graham sufficient to preclude summary judgment. In considering the situation in Graham, the court focused on the loss of chance for recovery suffered by the plaintiff in that case as relevant in the finding of causation of excess damages. There, the record contained sufficient information to permit evaluation of the "loss of chance." The present case does not contain such evidence. Here, the affidavit of Dr. Pisarello puts "loss of chance" at issue. Graham requires plaintiffs to prove that the Dr. Andrews' delay caused them damages in excess of $100,000.00, and further, at least under the facts of this case, appears to mandate trial on that issue.
For the foregoing reasons, the summary judgment is vacated, and the matter is remanded to the trial court for further proceedings including trial on the merits.
SUMMARY JUDGMENT VACATED; REMANDED.
NOTES
[1] East Jefferson General Hospital was also named as defendant, as the employer of the emergency medical technicians who were called to the scene. This defendant is apparently no longer involved in the present proceedings.
[2] The motion in limine requested an order setting forth the following: that the liability of Dr. Andrews and his insured is deemed admitted, following tender of the statutory limits; that the only triable issue between the Moodys and Dr. Andrews is the amount of damages; and that the liability of PCF is admitted and they may only contest quantum.