726 So.2d 1115 (1999)
Sandie EVANS
v.
Louis Phillip NOGUES, III, DDS and Medical Protective Company.
No. 98-CA-1827
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
*1116 Glenn E. Diaz, Carlos Zelaya, Chalmette, Louisiana, Counsel for Plaintiff/Appellee.
Peter E. Sperling, Greg A. Pellegrini, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge Pro Tempore PHILIP C. CIACCIO.
PLOTKIN, Judge.
This case presents the issue of whether summary judgment may be utilized to grant the statutory cap for medical malpractice damages to a plaintiff and against the Louisiana Patients' Compensation Fund in a case without economic loss, but with subjective general damages.
Appellant, the Louisiana Patients' Compensation Fund, (hereinafter, PCF) appeals the judgment of the trial court granting summary judgment in favor of the plaintiff, Sandie Evans, finding that Ms. Evans is entitled to at least the statutory cap for medical malpractice damages, $500,000.00. We find that a genuine issue of material fact does exist regarding the general damage quantum Ms. Evans is entitled to, therefore we reverse.
Ms. Evans brought suit on March 22, 1995, against Dr. Nogues and his insurer seeking damages for her dental and medical problems, which were caused by the severance of her lingual nerve during the extraction of her lower left wisdom tooth. The PCF intervened in the suit. Ms. Evans settled her claim with Dr. Nogues on April 11,1997, shortly before trial was scheduled, for the statutory limit of $100,000. However, she reserved her right to seek compensation from the PCF, thus, the suit continued as to intervener. On April 22, 1998, Ms. Evans sought summary judgment on the issue of damages. On May 29, 1998, the trial court conducted a contradictory hearing on the summary judgment motion and granted it, finding that this was a case where damages would easily be at least equal to the statutory cap of $500,000.00, therefore, summary judgment was warranted. The PCF disagrees and filed this appeal.

FACTS:
On March 13, 1992, Dr. Louis Phillip Nogues, III, DDS, extracted the lower left wisdom tooth of Ms. Sandie Evans. During the procedure, Dr. Nogues inadvertently severed plaintiff's lingual nerve. This injury left her with a feeling of numbness on the left side of her tongue. The numbness was instantaneous and Ms. Evans returned to Dr. Nogues' office very shortly after the surgery to inquire further as to why her tongue was numb. Dr. Nogues determined that Ms. Evans should wait before any further medical action was taken to see if the problem would correct itself. However, after plaintiff made repeated visits, Dr. Nogues decided to refer her to an oral and maxillofacial surgeon, Dr. Akin. Ms. Evans was seen by Dr. Akin on May 6 and May 12, 1992, and he determined that further medical treatment for her numbness was not necessary at that time.
As time passed, Ms. Evans continued to experience total numbness on the left side of her tongue. She also complained of sharp pains on the tip of her tongue and some slurred speech. On the advice of a friend, Ms. Evans eventually sought the help of another maxillofacial surgeon, Dr. Michael S. Block. On August 17, 1992, Dr. Block diagnosed her with a severed nerve in the area of the original tooth extraction by Dr. Nogues. At the time that Dr. Block initially saw Ms. Evans, and at subsequent appointments, he suggested that she only have surgery if her pain persisted and/or strengthened. By April 19, 1993, Ms. Evans' pain had reached a point where she believed surgery was her only option. Dr. Block explained to plaintiff that the surgery would not restore any sensation to her tongue and would only temporarily relieve the pain she was experiencing. Ms. Evans' first surgery was on August 19, *1117 1993. Dr. Block discovered that Ms. Evans had a neuroma at the sight of the severed nerve, which was causing the pain in her tongue. After the surgery, Ms. Evans stated her pain was substantially lessened.
However, within a few months after the initial surgery, Ms. Evans began experiencing pain again and a feeling of fullness in her mouth. She returned to Dr. Block and he performed another surgery to release the pressure surrounding the severed lingual nerve on May 4, 1994. This time, the surgery was done on an outpatient basis. This procedure was repeated again in 1995 and 1996. Moreover, Dr. Block testified at his deposition that since there is no way to correct Ms. Evans' problem, she will likely need to undergo this type of surgery approximately once a year for the rest of her life. At the time this appeal was filed, Ms. Evans was thirty-two years old.
Ms. Evans also developed problems with her jaw subsequent to the tooth extraction. Specifically, in August of 1996, Dr. Block began to suspect that Ms. Evans was suffering from TMD, temporal mandibular joint disease because he heard a popping noise in her left mandibular joint. He sent her to see Dr. Shawky E. Mohamed, another maxillofacial surgeon who specializes in treating TMD. Dr. Mohamed testified at deposition that she most likely had developed TMD as a direct result of the tooth extraction. He stated that because Ms. Evans was afraid of biting her tongue, she clenched her teeth together, which caused the TMD. He noted though that she had three complaints: masseter muscle pain, occipital headaches and shifting of the jaw. Dr. Mohamed concluded that she probably shifted her jaw because of a posture problem and how she sleeps, but that the muscle pain and headaches were most likely due to the clenching. Therefore, he suggested that Ms. Evans wear a soft splint at night to keep herself from clenching her teeth. He further stated that if her symptoms persisted and worsened, it may be necessary to switch her from a soft splint to a hard splint. Dr. Mohamed believes that if she were able to stop clenching her teeth, her TMD would be eradicated.

ASSIGNMENT OF ERROR:
In its sole assignment of error, the PCF argues that summary judgment was inappropriate because reasonable minds could conclude that Ms. Evans' damages amount to less than $500,000.00.
Under the provisions of the Medical Malpractice Act, La. R.S. 40:1299.41, et seq., the liability of a single health care provider is limited to $100,000.00 for the injury or death of any one person. La R.S. 40:1299.42(B)(2). The Act states that general damages in excess of $100,000.00, but not more than $500,000.00, shall be paid by the PCF. La. R.S. 40:1299(B)(1). Once a medical malpractice victim settles with a health care provider or its insurer for $100,000.00, the liability of the health care provider has been admitted or established. La R.S. 40:1299.44(C)(5). A settlement for the health care provider's maximum liability of $100,000.00 triggers the liability of the PCF and further precludes the PCF from contesting the health care provider's liability. La R.S. 40:1299.42(B)(3); Stuka v. Fleming, 561 So.2d 1371, 1374 (La. 1990), cert. denied, Louisiana Patient's Compensation Fund v. Stuka, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). In the instant case, Dr. Nogues settled for the full amount of his policy, thus, liability has been established and the PCF is precluded from contesting liability. Thus, the sole issue contested between Ms. Evans and the PCF is the amount of the general damage award.
Recently, the jurisprudence has been in a state of flux regarding whether or not there is a need to prove causation for secondary damages once a finding of liability on the part of the PCF is triggered by the settlement for the statutory limit of $100,000.00 by the primary care provider. See, Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365; Bramlet v. The Louisiana Patients' Compensation Fund, 97-1047 (La.App. 5 Cir. 5/27/98), 712 So.2d 300, writ granted, judgment set aside by, 98-1728 (La.11/6/98), 722 So.2d 984; Pendleton v. Barrett, 97-570 (La.App. 3 Cir. 12/23/97), 706 So.2d 498, writ granted, judgment set *1118 aside by, 98-0208 (La.3/20/98), 715 So.2d 1196; Harrison v. Smith, 96-1005 (La.App. 5 Cir. 4/29/97), 694 So.2d 1090, writ granted, reversed in part, 97-1402 (La.10/3/97), 701 So.2d 182; Greer v. Lammico, 29,066 (La. App. 2 Cir. 1/31/97), 688 So.2d 692, writ granted, judgment set aside by, 97-0731 (La.11/7/97), 703 So.2d 30. However, these cases are primarily concerned with proving causation of secondary harm, not primary and original harm. In the instant case, it has been conceded that all of plaintiff's harm is original and primary, therefore, precluding the need to determine if her secondary harm has been proven and if so, whether she is entitled to compensation from the PCF. Causation is not an issue at all in this case; the PCF is liable.
A motion for summary judgment is proper when the pleadings, depositions, answers and omissions on file, together with the affidavits submitted, show that there is no genuine issue of material fact, so that the mover is entitled to judgment as a matter of law. When reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law on the facts before the court, summary judgment is warranted. Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La.9/5/96), 679 So.2d 893, 897, citing, Reynolds v. Select Properties Limited, 634 So.2d 1180 (La.1994); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The PCF correctly states that the amount of damages to be awarded is a question of fact. However, where the facts have been established by the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law, a summary judgment shall be rendered. Id.; See, La.C.C.P. art. 966(B).
Both parties cite the seminal case, Bijou, supra, to support their positions. In Bijou, the medical malpractice victim sought summary judgment on damages after liability was established. The patient in that case was a forty-one year old man who was left in a quadriplegic condition after receiving inadequate medical care. He testified that he was formerly very involved in outdoor activities, including scouting activities with his nine year-old son. He also stated he had numerous ailments that directly resulted from his quadriplegic state including severe depression. Furthermore, Mr. Bijou presented compelling evidence that his entitlement to past and future wages totaled much more than $500,000.00. Based on these facts, the supreme court reversed the court of appeal and reinstated the summary judgment granted by the trial court on damages, allowing Mr. Bijou to recover the full $500,000.00.
In the instant case, plaintiff equates her situation to that of Mr. Bijou. She argues that because she will most likely have to endure surgery every year for the rest of her life, her situation is similar to Mr. Bijou's because her loss is continuous. Mr. Bijou lost his future earnings for the rest of his life, and Ms. Evans will have to undergo repeated surgeries for the rest of her life. On the other hand, the PCF argues the cases are clearly distinguishable because Ms. Evans' damages are not capable of precise calculation like Mr. Bijou's economic damages, and therefore, reasonable minds could differ as to the proper amount of damages.
In Harrison, supra, the Fifth Circuit reversed the trial court's granting of summary judgment on damages and distinguished its case from Bijou. The plaintiff in Harrison sought to recover damages for the deaths of his wife and child. The trial court granted summary judgment finding that "even nominal love and affection between the parties would certainly lead reasonable men to award at least $500,000.00 for the loss of a wife and a child." Harrison, 694 So.2d at 1093. However, the Fifth Circuit reversed stating that,
Unlike Bijou, the damages in question are not ongoing, and the amounts not only are not proved by affidavit, but are incapable of such proof.
* * *
It is axiomatic that such claims of general damages are subjective and do not lend *1119 themselves to exact and consistent quantification. As demonstrated by the quantum cases cited by both appellant and appellee in their memoranda, not only is it possible for reasonable persons to differ as to the proper amount of such damages, but, in fact, they often do differ as to such awards.
Importantly, the supreme court affirmed this portion of the Fifth Circuit's judgment, even though it was reversed on other issues.
Most recently, in Bramlet, supra, the trial court also granted summary judgment on damages for the full statutory amount. In that case, the victim, Dr. Bramlet, experienced cardiac problems on September 26, 1987. The doctor who originally treated him at the hospital administered the incorrect drug and worsened his condition. As a result, Dr. Bramlet's heart was severely damaged and he was awaiting a heart transplant. Dr. Bramlet was a complete cardiac invalid until his death on November 1, 1994. The trial court found, "that damages easily exceeded $400,000.00, the amount she awarded." Bramlet, 712 So.2d at 301. The Fifth Circuit agreed, but felt constrained to reverse based on Graham, supra. However, the supreme court granted writs in Bramlet and in a per curiam reinstated the judgment of the trial court. Furthermore, the supreme court definitively stated that Graham does not,
prohibit a summary judgment when the health care provider has paid $100,000 in settlement of the claim and when there is no factual dispute that the settling health care provider was one hundred percent at fault or that the fault of the health care provider "caused damages far in excess of $500,000," as observed by the court of appeal.
Bramlet, 98-1728, *1 (La.11/6/98), 722 So.2d 984.
In light of these three cases, it is apparent that we must consider whether or not Ms. Evans' general damages are ongoing and whether or not they are capable of quantification in excess of $500,000.00 as a matter of law. Here, the evidence submitted in support of her motion for summary judgment proves that she will most likely have to receive medical treatment for the rest of her life. However, a specific dollar amount was not assigned to her future losses, because, although ongoing, those loses are subjective, not economic as they were in Bijou.[1] Ms. Evans testified that she experiences fluctuating levels of pain and discomfort before and after the surgeries. She stated that she has not had any changes in her ability to partake in the same social activities that she enjoyed prior to her injury. At her deposition, she also stated that she does not miss significant time from work due to her nerve injury, but rather, explained that she generally missed work for dental "appointments" only. She testified that the long periods of absence from work she has experienced were incurred because of an unrelated illness. Ms. Evans undoubtedly has suffered and will continue to suffer emotional and physical pain, but her injuries may not rise to the level of severity that was suffered by the victims in Bijou, Harrison, and Bramlet, supra. Furthermore, although she will probably have to incur several future surgeries, it is not possible to attach a value to the pain and suffering associated with the surgeries as a matter of law in the same manner in which it was possible in Bijou to determine economic loss as a matter of law. The dollar amount attached to her general damages is an amount upon which reasonable minds could differ, thus the question must be submitted to a jury for determination.
For the foregoing reasons, the judgment of the trial court granting plaintiff summary judgment is reversed and this case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Ms. Evans future medical bills will be paid by the PCF, separate and apart from the $500,000.00 she seeks in general damages:

Payment for medical care and related benefits shall be paid by the Patient Compensation Fund without regard to the five hundred thousand dollar limitation imposed in La. R.S. 40:1299.42.
La. R.S. 40:1299.43.