| JAMES L. CANNELLA, Judge.
The Defendant, Scat Recycling, L.L.C. (Seat), appeals from a summary judgment rendered in favor of the Plaintiff, Banc One Leasing Corporation (Banc One Leasing), in the amount of $19,679.37 plus interest, late fees, attorney fees and costs. For the reasons which follow, we reverse and transfer.
This case arises out of an equipment lease agreement purportedly entered into between Banc One Leasing and Scat. There is a document evidencing the agreement. However, the controversy arises because the person who signed the agreement for Scat was the co-defendant, Anthony Tulli, who, the owners of Scat, James, and his wife, Scarlet Arledge, contend had no authority to enter such an agreement.
As background to this convoluted business operation that has given rise to five separate lawsuits, James Arledge was formerly an executive of Southern Scrap, a company that specialized in the salvage and sale of scrap metals. Anthony 13Tulli was also employed at Southern Scrap as the company’s accountant. On April 16, 1996 after leaving the employ of Southern Scrap, James Arledge started his own company known as Arledge and Associates, L.L.C. (A & A). The original and only members of that company were James and his wife, Scarlet. The principal business of A & A was to do consulting work for Southern Scrap on environmental and governmental regulatory matters. On March 16, 1998, James and Scarlet Ar-ledge organized a second company called JWA Industrial Services, L.L.C. (JWA). The purpose of this company was to provide skilled laborers for the cutting up of scrap metal. Anthony Tulli, who had been a co-employee with James Arledge at Southern Scrap, and whom James Arledge also considered a friend, contacted James Arledge and was employed by him to handle both accounting and payroll services for A & A and JWA. Eventually, Tulli was handling all of the ■ financial affairs of the two Arledge companies.
On November 17, 1999, the Arledges organized a third company, Scat. They were the sole owners of Scat. The purpose of this company was to operate a scrap yard in Mobile, Alabama, which would be a competitor of Southern Scrap. Since A & A and JWA did business with Southern Scrap and Scat was a competitor, the Ar-ledges did not want their ownership of Scat made public. Accordingly, a Scat employee, Raymond Plasse, was listed in the initial Scat filing with the Louisiana Secretary of State as the sole original organizer and manager of the company. No mention was made of the Arledges on the public record. The registered office of the Company was listed in Jefferson Parish. A separate written operating agreement was executed a year later, on December 1, 2000, which clearly showed that the Ar-ledges were the sole owners/members of Scat. This document was witnessed by Anthony Tulli, who began providing the same accounting and payroll services for Scat as he did for the Arledges’ other companies.
1 ¿Anthony Tulli had an ongoing banking relationship with Banc One and brought two Banc One officers to the Arledges’ house in Tangipahoa Parish to talk to him about the advantages of Banc One over his present bank. Thereafter, the Arledges switched their companies’ accounts to Banc One. The Arledges contend that they informed Banc One that they were the sole owners of Scat and provided Banc One with a copy of the operating agreement. The operating agreement provided *100 that funds could be borrowed on behalf of Scat “only upon the express written authorization of the Members.” Nevertheless, in or around May, 2001, Anthony Tulli obtained a $35,000 line of credit with Bank One for Scat. He did this by providing Bank One with forged documents indicating that he was an owner of Scat. Also, on April 29, 2002, Anthony Tulli, continuing to misrepresent himself as an owner of Scat, obtained a $100,000 loan/lease of metal containers from Banc One Leasing, a subsidiary of Banc One, despite Banc One having documentation indicating that Anthony Tulli was not an owner of Scat. This transaction is the subject of the instant lawsuit.
Scat was loaned $100,000 to purchase metal containers for its business and the loan/lease was secured by a security lease on the containers. Under the terms of the lease, Scat was to pay Banc One Leasing $2,034.05 per month over a five year term. In the event of default, Banc One Leasing could, at its option, declare the unpaid balance of the obligation immediately due and payable. Scat failed to make the payment due on August 23, 2002 and the payments due thereafter. Banc One Leasing alleged that it was due under the lease the principal amount of $98,396.86, unpaid interest of $7,667.74 accrued as of August 23, 2002, together with interest thereafter at the rate of 18% per annum (per diem $48.53), fees and late charges of $406.80 and reasonable attorney fees and costs.
Scat filed an exception to venue contending that at the time suit was filed, its registered office was in Tangipahoa Parish, where all contracts were entered, | spayments were made and business was conducted. The trial court denied the exception without reasons. Scat applied for writs to this Court, which were denied as follows: “Based on the showing made, we find no basis upon which to disturb the action of the trial court. Accordingly, relator’s writ is denied.” Banc One Leasing Corp, M.A v. Scat Recycling, L.L.C. and Anthony Tulli, 03-0684 (La.App. 5th 6/25/03), writs denied, 03-2111 (La.9/19/03), 853 So.2d 619.
Thereafter, Banc One Leasing moved for summary judgment against Scat.[1] Following a hearing, the trial court granted summary judgment as prayed for by Bank One Leasing and set the attorney fees at $19,679.37. It is from this judgment that Scat appeals.
On appeal, Seat’s primary argument is that the trial court erred in granting the summary judgment because there are numerous material facts at issue that preclude summary judgment. The loan/ lease agreement allegedly entered into by Banc One Leasing and Scat was signed by Anthony Tulli and not the Arledges. Therefore, to be successful in its pursuit, Banc One Leasing must show that, Anthony Tulli had the authority to obligate Scat. Scat argues that no such uncontested facts exist. To the contrary, Bank One was in possession of the Scat operating agreement listing only James and Scarlet Ar-ledge as company members and expressly providing that only a member could obligate the company on a loan. Further, apparent authority to take out a loan cannot be derived from Anthony Tulli’s authority to sign checks on the Scat account. Any other evidence of apparent authority is contested, that is, shown by material facts that are at issue. And finally, ratification of the agreement is contested because Scat argues that there is no showing *101 that the Arledges knew of the loan/lease agreement or that it benefited Scat. To the contrary, Scat argues that the evidence as to whether the [ Joan proceeds were used to purchase the scrap metal containers is disputed. It is as likely that the loan proceeds were withdrawn by Anthony Tulli for himself. Further, there is no showing that Scat benefited from the loan because it only allowed Anthony Tulli to continue to perpetrate his fraudulent scam for a longer period of time and gave him an additional $100,000 to steal.
Banc One Leasing argues that the undisputed facts support the summary judgment, that it is undisputed that it has a loan/lease agreement with Scat, that Anthony Tulli had actual as well as apparent authority to enter into the loan/lease agreement based on the authority given by James Arledge to Anthony Tulli to be a signatory on the Scat checking account, and that Scat ratified the loan/lease agreement because after it knew of the agreement it continued to take advantage of and benefit from the leased equipment and thereby the agreement.
It is well settled that appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327 (La.App. 5th Cir. 04/25/00), 761 So.2d 84, mi denied, 00-1453 (La.6/30/00), 766 So.2d 544; Moody v. United Nat. Ins. Co., 98-287 (La.App. 5th Cir.9/29/98), 743 So.2d 680. Thus, this Court must consider whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith, supra; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Moreover, the summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Magnon v. Collins, supra. The burden of proof remains with the movant.
In this case, Bank One Leasing has asserted a cause of action against Scat for breaching the lease agreement. To be successful on its claim, Bank One 17Leasing must first prove a valid lease agreement with Scat. After reviewing the record in this case, we find that there are material issues of fact that preclude summary judgment in this case. The loan/lease agreement relied upon by Banc One Leasing was signed by Anthony Tulli. Banc One was in possession of the Scat operating agreement designating James and Scarlet Arledge as its only two members and restricting loan authority to members. Bank One was aware of the Arledges’ interest in maintaining the secrecy of their ownership of Scat. Anthony Tulli was made a signatory on the Scat checking account with James Arledge’s consent. Being a signatory on a checking account does not create actual authority to incur a $100,000 indebtedness for the checking account owner. In attempting to show apparent authority for Anthony Tulli or ratification by Scat, Banc One Leasing has not met its burden regarding uncontested material facts. To the contrary, the facts supporting these two legal theories are hotly contested by Scat. Scat, by its operating agreement made it known to Banc One that Anthony Tulli was not a member of Scat and that only James and Scarlet Arledge were members. Whether there were dealings between Banc One and the Arledges of such a nature so as to make it reasonable for Banc One Leasing to determine that the operating agreement had been amended is a contested material factual issue. Additionally, the uncontested facts do not unequivocally establish that the loan pro *102 ceeds were used to purchase the scrap metal containers any more than that they were withdrawn by Anthony Tulli without the Arledges’ knowledge or consent. There were ample funds in the checking account to purchase the containers without the loan proceeds. Thus, if the scrap metal containers were purchased with Scat profits rather than the fraudulently obtained loan proceeds, the evidence of ratification is insufficient. These are all factual issues that must be fleshed out at trial. We note also that it seems that Banc One Leasing was in part induced to enter the agreement with Anthony Tulli based on fraudulent and forged documents that he 1 ^provided evidencing his authority. This lends further support to Scat’s argument that the evidence of actual or apparent authority of Anthony Tulli to make the loan is contested and is not properly to be resolved by summary judgment.
Upon review of this record, we find an ongoing relationship among all the parties that spanned at least a couple of years and different businesses. While it is possible that the interactions between the parties did justify Banc One Leasing into believing that Anthony Tulli had the authority, actual or apparent, to enter the loan/lease agreement on behalf of Scat, thereby obligating Scat under the term of the agreement, resolution of those issues presents material issues of fact precluding summary judgment. Therefore, we find that the summary judgment in favor of Banc One Leasing was erroneously entered at this time and we set aside and reverse that ruling.
Scat also argues that the trial court erred in denying its exception of venue. Since the case is in a pre-trial posture, we will review this argument. We note that in the factual findings of the trial court, in ruling on the summary judgment request, with affidavits and other evidence, the trial court found that Raymond Plasse was a manager of Scat. This factual finding seems to be directly contrary to the trial court’s implicit finding on denial of the exception of venue that he could not effect the change of Scat’s registered office from Jefferson Parish to Tan-gipahoa Parish because he was not a manager. The record before us indicates that Raymond Plasse was the sole individual who signed the Articles of Organization for Scat on the public record of the Secretary of State’s Office. Therein, he was designated as the only manager of Scat. He also signed the documents designating the original Registered Office of Scat in Jefferson Parish. He was given the managerial duties of Scat by James Arledge and conducted them for several years. Thereafter, seven days before this suit was filed, he filed the Notice of Change of Registered Office, changing it from Jefferson Parish to | flTangipahoa Parish. The initial discussions between James Arledge and Banc One took place in Tangipahoa Parish. The loan/lease agreement was not entered in Jefferson Parish. Scat’s business, to the extent that it was conducted in Louisiana rather than Mobile, Alabama, was conducted in Tangipahoa Parish. Three other lawsuits were filed in Tangipahoa Parish. Therefore, since the ruling on the venue exception is interlocutory, the case is in a pre-trial posture, and there are now factual findings contrary to the facts supporting the ruling, we reverse the trial court ruling denying Scat’s exception to venue, find that the exception should be granted and order the part of the suit in which Bank One Leasing is asserting claims against Scat transferred to Tangipahoa Parish, the Twenty-First Judicial District Court.[2]
*103 Accordingly, for the reasons set forth above, we vacate and reverse the trial court rulings granting summary judgment in favor of Banc One Leasing and denying Scat’s venue exception, grant the exception of venue and order the case transferred to the Twenty-First Judicial District Court, Tangipahoa Parish. Costs of appeal are assessed against Bank One Leasing.

REVERSED AND TRANSFERRED.

. Banc One Leasing also, but separately, moved for a summary judgment against Anthony Tulli. That summary judgment was granted in Banc One Leasing’s favor and Anthony Tulli did not appeal from that judgment. It is not part of this appeal.

. We note that part of this lawsuit asserted claims by Bank One Leasing against Anthony *103 Tullí. He waived any venue challenge he might have had and summary judgment has been rendered against him, without appeal, and is final. The findings in this opinion have no effect on the status of that part of the case.